UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

IN RE: SUBPOENA TO
CENTRALSQUARE TECHNOLOGIES,
INC.

In Connection With:

Heather Nicole Durham, on behalf of
herself and others similarly situated,

v.

City of Charlotte, a North Carolina
municipal corporation,

Case No. 3:21-cv-00638-RJC-SCR
United States District Court
Western District of North Carolina
Charlotte Division

23MC42

## PETITIONER'S BRIEF IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA OR FOR TRANSFER TO WESTERN DISTRICT OF NORTH CAROLINA

### INTRODUCTION

This is a proceeding by Petitioner, Heather Nicole Durham, to compel a third party, CentralSquare Technologies, Inc., ("CentralSquare"), to comply with a *Subpoena to Testify at a Deposition in a Civil Case* (attached as Exhibit A, the "Subpoena"). The Subpoena was issued in a putative class action pending in the Western District of North Carolina captioned *Heather*

1

*Nicole Durham, v. City of Charlotte,* Civ. No. 3:32-cv-638 (W.D.N.C.) (the "Underlying Action").

CentralSquare consents to the motion to compel being transferred to the Western District of North Carolina under Rule 45(f) of the Federal Rules of Civil Procedure. Ex. B (Email from counsel for CentralSquare stating: "CentralSquare consents to transfer of the motion to compel to the U.S. District Court for the Western District of North Carolina, where the underlying case is pending.") Such transfer is the preferred relief sought in this Court by Petitioner.

In the alternative, should this Court choose not to transfer the motion to compel, Petitioner asks this Court to compel CentralSquare to comply with the Subpoena.

Petitioner is the plaintiff in the Underlying Action, and the crash report data sought by the Subpoena is vital to Petitioner in that case. In the Underlying Action, Petitioner alleges that the City violated Petitioner's and class members privacy rights under the federal Driver's Privacy Protection Act of 1994 (the "DPPA"). *See* 18 U.S.C. §§ 2721-2725. In the Underlying Action, Petitioner must prove that her own and class members' private personal information which the City of Charlotte (the "City") disclosed for marketing purposes came "from a motor vehicle record." 18 U.S.C. § 2724. Petitioner has served discovery requests on the City for production of computer data which would prove that fact, but the City represents that the data is controlled by CentralSquare and that the City is unable to obtain the information. Declaration of Crystal Combs, Ex. C at ¶¶ 5-8.

Upon information and belief, the crash report data sought by Petitioner

is in the custody and control of CentralSquare. CentralSquare is an information technology vendor which the City uses to assist the City's police department employees in the creation and handling of traffic crash reports. *Id.* at ¶ 6. In an earlier lawsuit, *Hensley v. City of Charlotte*, 3:20-cv-482 W.D.N.C., CentralSquare produced identical crash report data, in the form which is now requested by Petitioner, but for a different date range.

Petitioner served the Subpoena on CentralSquare to obtain the necessary computer data to prove that the personal information disclosed by the City was information "from a motor vehicle record," but CentralSquare objected to the Subpoena and failed to comply with the Subpoena. Petitioner requests that the Court either transfer this motion to the Western District of North Carolina or, in the alternative, compel CentralSquare to comply with the Subpoena.

## STATEMENT OF THE CASE

Plaintiff filed the Underlying Action in the Western District of North Carolina on November 30, 2021. *See* Complaint attached as Ex. D. On July 28, 2023, Plaintiff caused the Subpoena to be issued to CentralSquare, which has an office in Greensboro. *See* Ex. A. The Subpoena was served on CentralSquare on July 31, 2023. *See* Proof of Service attached as Ex. E. CentralSquare objected to the Subpoena on August 8, 2023. *See* objection attached as Ex. F. On October 16, 2023, CentralSquare consented to having a motion to compel compliance with the Subpoena transferred to the Western District of North Carolina. *See* email attached as Ex. B. Petitioner commenced this miscellaneous proceeding in this Court by a filing her *Motion to Compel Compliance With Subpoena or to Transfer Motion to the Western*

3

*District of North Carolina* (the "Motion").

## STATEMENT OF FACTS

Petitioner is the plaintiff in the Underlying Action. Her complaint against the City in the Underlying Action, attached as Exhibit D (the "Complaint"), alleges that the City violated Petitioner's rights under the federal Driver's Privacy Protection Act of 1994 (the "DPPA"). *See* 18 U.S.C. §§ 2721-2725.

In the Complaint, Plaintiff alleges that the Charlotte Mecklenburg Police Department ("CMPD") is a component part of the City. Complaint, Ex. D at ¶ 3. The Complaint further alleges that the CMPD obtained the DPPA-protected personal information of Plaintiff and other drivers from North Carolina's DMV, placed that personal information in crash reports, and then disclosed those crash reports and the personal information therein to others for the purpose of marketing—a purpose which is not permitted by the DPPA—without the drivers' consent. *See*, e.g., Complaint, Ex. D at ¶¶ 64-89, 108-116.

In the Underlying Action, the DPPA requires Petitioner to prove that her personal information and that of the putative class members which was disclosed by the City came "from a motor vehicle record." 18 U.S.C.A. § 2724 ("A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.") Petitioner's information technology expert, Sankar Selvaraj, has signed two declarations (one in this case and another in the earlier *Hensley* case) stating that computer

4

information from CentralSquare can show whether any particular crash report completed by the CMPD was auto-populated by a computer using personal information from North Carolina's DMV. *See* Declarations of Sankar Selvaraj attached as Exhibits G and H.

In discovery in the Underlying Action, Plaintiff asked the City to produce the following information:

> 1. A copy of the database containing all crash reports generated by CMPD between 11/30/2017 and 6/30/2018. The database should be produced in native XML format but with all information decrypted. Alternatively, you may provide the database in native XML format along with the decryption program and all necessary decryption keys.
>
> 2. A copy of all crash reports generated by CMPD between 11/30/2017 and 6/30/2018 in the form of XML files generated at the officer's machine pending supervisor's approval. The data should be produced in native XML format but with all information decrypted. Alternatively, you may provide the data in native XML format along with the decryption program and all necessary decryption keys.

Declaration of Crystal Combs, Ex. C at ¶ 4.

The City avers that it is unable to produce the data sought by the above requests for production. *Id., passim*, especially ¶¶ 5-8. However, the City's vendor, CentralSquare, is capable of producing the data. In fact, in response to a subpoena in the *Hensley* case, CentralSquare already produced a subset of the data now sought by Petitioner. *See* Decl. of Selvaraj, Ex. G ¶ 2(c).

CentralSquare is an information technology vendor which the City uses to assist the City's police department employees in the creation and handling of traffic crash reports. *Id.* at ¶ 6. In the earlier *Hensley* lawsuit, CentralSquare produced similar crash report data in the form requested by

5

Petitioner. *See* Ex. I, 10/12/23 email of CentralSquare counsel Andrew Koelz ("But it is my understanding that the scaled down environment and instructions on how to extract the crash report data and dataclip metadata one report at a time would be equivalent to what CentralSquare provided in response to the Hensley subpoena.") As described in paragraph 2(c) of the Declaration of Sankar Selvaraj, attached hereto as Exhibit G, in the earlier *Hensley* litigation, CentralSquare produced "Decrypted CMPD electronic crash reports in XML format dated between September 1, 2017 and December 31, 2017."

On July 31, 2023, Petitioner served the Subpoena on CentralSquare which identified the following deposition topics and which requested production of the following documents:

> **Matters upon which examination of CentralSquare Technologies, LLC is requested:**
> 1. How the ReportBeam software provided to Charlotte-Mecklenburg Police Department ("CMPD") from November 30, 2017 through June 30, 2018 works, how the information that CMPD enters for the creation of crash reports is stored and encrypted, and how the data can be decrypted.
>
> 2. That the data requested in this subpoena contains all crash report data generated by CMPD and maintained by CentralSquare for the period from November 30, 2017 through June 30, 2018, and that the data is maintained in the ordinary course of CentralSquare's business as part of the services it provides to CMPD.
>
> **Documents to be produced by CentralSquare Technologies at deposition:**
>
> A copy of the database containing all crash reports generated by

6

CMPD between 11/30/17 and 6/30/18. Also a copy of the crash report in the form of XML files generated at the officer's machine pending supervisor's approval. The database should be produced in native XML format but with all information decrypted. Alternatively, you may provide the database in native XML format along with the decryption program and all necessary decryption keys.

Subpoena, Ex. A.

On August 8, 2023, CentralSquare objected to the Subpoena as shown by the email and letter found at Ex. F. Despite the fact that in the earlier *Hensley* case, CentralSquare produced a larger volume of similar data at no cost pursuant to a confidentiality order, CentralSquare now objects to the current Subpoena on grounds which include relevance and proportionality, confidentiality, and undue burden. *See* Ex. F.

As recited in the Motion, counsel for CentralSquare and counsel for Petitioner conferred in good faith in an effort to resolve the discovery dispute without court involvement, but were unable to resolve the matter.

## ARGUMENT

### I. PETITIONER REQUIRES THE INFORMATION SOUGHT BY THE SUBPOENA IN THE UNDERLYING LITIGATION.

To prove that the City violated the DPPA-protected privacy rights of Petitioner and putative class members, Petitioner must prove that their personal information disclosed by the City on crash reports came "from a motor vehicle record." 18 U.S.C. § 2724. The Fourth Circuit has explained that "from a motor vehicle record" should be interpreted narrowly and that it means *directly* from a motor vehicle record. *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 927 (4th Cir. 2022) ("[T]he DPPA imposes civil liability only on

7

a defendant who obtains personal information from a motor vehicle record, but not on a defendant who merely obtains personal information that can be linked back to (i.e., derived from) such a record.") Motor vehicle records, according to the Fourth Circuit, are contained in the NCDMV's database." *Id.*

The data sought by the Subpoena is key to showing that the personal information found on any particular crash report came directly from the NCDMV database and, therefore, that it came directly "from a motor vehicle record." Here is why.

According to Petitioner's information technology expert, Sankar Selvaraj, the electronic versions of the CMPD crash report documents maintained by CentralSquare contain information showing whether a driver's personal information contained on the crash report was auto-populated by the CMPD police officer's computer using information obtained *directly* from North Carolina's DMV database. More specifically, Mr. Selvaraj, using a computer algorithm, can screen the XML computer files sought by Petitioner's Subpoena and look for the presence of a string of information referred to as a "dataclip." If a dataclip is present in CentralSquare's XML version of a crash report, then that report was necessarily auto-populated with personal information taken directly from the NCDMV database. Mr. Selvaraj can then use that information to create a list (the "DMV List") of all the drivers shown on the City's crash reports whose name, address, and other DPPA-protected personal information came directly from the NCDMV database.

Petitioner can then cross-reference the DMV List with a second list (the "Marketing Letter List") comprised of drivers to whom at least one marketer

sent solicitation letters using drivers' names and addresses contained in the CMPD crash reports. The information necessary to create the Marketing Letter List is already in the possession of Petitioner's counsel, having been obtained from a North Carolina law firm which sends targeted direct mail solicitations to wreck victims identified in CMPD crash reports.

If an individual is identified in both the DMV List and the Marketing Letter List, then that individual is a class member as defined in Petitioner's Underlying Action because, the DMV List and the Marketing Letter List, read together, show that the City disclosed the drivers' DPPA-protected personal information, taken directly from the NCDMV database, for the impermissible purpose of marketing.

In sum, Petitioner's identification of the class members is dependent on obtaining the CMPD crash reports from CentralSquare. CentralSquare can obviously produce the files in the XML file-format requested by Petitioner because it did it before in *Hensley*, at no cost.

## II. CENTRALSQUARE'S UNDUE BURDEN OBJECTION IS INCONSISTENT WITH THE FACT THAT IT COMPLIED WITH A SIMILAR SUBPOENA IN *HENSLEY* WITHOUT OBJECTION AND AT NO COST.

*Hensley* was a similar putative class action against the City but commenced by a different plaintiff. Counsel representing the plaintiff and defendant in the Underlying Action are the same attorneys who served in the *Hensley* action. The *Hensley* plaintiff served CentralSquare with a subpoena seeking similar crash report data in XML format. In *Hensley*, CentralSquare produced the requested data in the requested format, all at no cost. CentralSquare did serve some objections to the subpoena in *Hensley*, but cost was not among them. And once a satisfactory protective order was entered,

9

CentralSquare produced the requested data in the requested format. So it is obvious that CentralSquare could easily comply with the Subpoena without incurring significant cost. Even so, CentralSquare now asserts that it cannot provide the data in a useful format, and that even if it provides data in a virtually useless format, it will incur significant expense.

If compliance with the Subpoena would result in significant expense, then Rule 45(d)(2)(B)(ii) requires the producing party to be protected, and Petitioner's counsel have offered to pay CentralSquare a reasonable amount for the cost of producing the data. Still, it is hard to understand how it would be expensive for CentralSquare to produce a mere copy of the requested data, along with instructions for using the data. Then Petitioner could employ her own information technology expert to interpret the data at Petitioner's own expense.

It is CentralSquare's burden to show that it is entitled to avoid compliance with the Subpoena on the ground of undue burden or expense. It should not be allowed to disregard efficient means of production (which it presumably employed when it responded to the similar subpoena in *Hensley* at no cost) and, instead, focus only on the means that would require the most burdensome effort from CentralSquare.

### III. LEGAL STANDARDS REGARDING ENFORCEMENT OF SUBPOENAS

Background legal issues involving the DPPA are discussed above. This section presents legal standards applicable to enforcement of a subpoena.

#### A. Rule 45(f) provides for transfer of motion to issuing court.

Under Rule 45, this Motion to compel compliance with the Subpoena must be filed in "district where compliance is required." Fed. R. Civ. P.

45(d)(2)(B)(i). However, Rule 45(f) provides that the Court "may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

B. Relevance and proportionality

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26.

The relevance requirement of Rule 26 "is not, on its own, a high bar." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). However, there is a proportionality component as well. "Proportionality requires courts to consider, among other things, whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* at 188–89. Courts should consider "the requesting party's need" for the information and whether "the same information, or comparable information" from a party or other source would also satisfy that need. *Id.* at 189.

C. Confidentiality

"[D]isclosure subject to a confidentiality order, if feasible, is generally preferable to an outright denial of discovery." *Id.* at 192–93. A protective

11

order can protect confidential information. *Equal Emp. Opportunity Comm'n v. Sheffield Fin., LLC*, No. 1:06CV00889, 2007 WL 1726560, at *6 (M.D.N.C. June 13, 2007). Confidentiality concerns should be remedied by limiting the use of the information, not by preventing its production. *See Santiago v. S. Health Partners*, No. 1:15CV589, 2016 WL 4435229, at *4 (M.D.N.C. Aug. 19, 2016) (Quoting: "[T]he appropriate remedy would be a confidentiality stipulation limiting use of the information, rather than preventing its production altogether.").

D. <u>Undue burden and expense</u>

> Undue burden "usually raises a question of the reasonableness of the subpoena," which "requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2022).

*Alston v. Jones*, No. 1:19-CV-96, 2022 WL 1809422, at *1 (M.D.N.C. June 2, 2022). A subpoena "that would require a non-party to incur excessive expenditure of time or money" may constitute an undue burden. *Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012). "The burden to show undue burden is on the party who moves to have the subpoena quashed." *Alston v. Jones*, No. 1:19-CV-96, 2022 WL 1809422, at *1 (M.D.N.C. June 2, 2022). "This is a heavy burden . . . ." *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).

> A trial court has broad, but not unlimited, discretion in evaluating the circumstances of a case when considering quashing a subpoena on grounds of oppressiveness. It must carefully examine the

12

circumstances presented to it and, when appropriate, consider the possibility of modifying the subpoena rather than quashing.

*Id.*

## IV. CENTRALSQUARE CONSENTS TO TRANSFER OF THIS MOTION TO W.D.N.C.

Consent of "the person subject to the subpoena" is a ground for transferring the Motion to the issuing court. Fed. R. Civ. P. 45(f). The Underlying Action is pending the Western District of North Carolina, and Petitioner asks that this Motion be transferred there. Transfer is reasonable since the Underlying Action has been pending there for almost two years and that Court is familiar with the case.

If this Motion is not transferred to the Western District of North Carolina, then this Court should compel compliance with the Subpoena because:

- the crash report data sought by Petitioner is directly and vitally relevant to proving a DPPA violation in the Underlying Action,
- compliance will pose no risk to CentralSquare's confidential information where Petitioner's attorneys continue to safeguard some of the same information and have done so for over two years pursuant to a protective order, and
- because compliance should result in minimal burden to CentralSquare. If for some reason there is an unavoidable significant expense resulting from compliance, then that expense could be shifted to Petitioner, but CentralSquare should not be allowed to avoid efficient means of production where available.

13

## V. THE CRASH REPORT DATA AND RELATED DEPOSITION TOPICS ARE RELEVANT TO THE UNDERLYING ACTION.

The deposition topics and crash report data sought from CentralSquare are relevant as proof which is necessary in the Underlying Action. The proof is necessary to show that the DPPA-protected personal information of Petitioner and putative class members which the City disclosed to others came "from a motor vehicle record." *See* 18 U.S.C. § 2724. Without this information, Petitioner likely will be unable to prove her DPPA violation or those of the putative class members. CentralSquare asserts that its client, the City, has access to the subpoenaed information, but the City has provided the declaration of its Technology Services Officer, Crystal Combs, who states that the City cannot access this information, despite its best efforts to do so, even with the technical assistance of CentralSquare. Combs Decl., Ex. C at ¶¶ 5-8 ("[W]e determined that the City does not have the ability to produce the information [Petitioner] has requested.") So, Petitioner needs testimony and production described in the Subpoena, and CentralSquare is the only potential source of that information. The Subpoena is proportional to the needs of the case because the information sought is necessary for proof of a DPPA violation, which is the essence of Petitioner's claim and the putative class action in the Underlying Action.

## VI. CONFIDENTIALITY SHOULD NOT BE AN IMPEDIMENT TO PRODUCTION WHERE COUNSEL HAVE POSSESSED AND PROTECTED SIMILAR CONFIDENTIAL INFORMATION FOR MORE THAN 2.5 YEARS.

CentralSquare was deposed in *Hensley* on January 12, 2021 and at that time produced its ReportBeam Installation and User Guide and its

14

ReportBeam Server Guide. *See* the cover page and exhibit list for the CentralSquare deposition transcript attached as Exhibit J. Counsel for Petitioner have confidentially safeguarded that CentralSquare information for more than 2.5 years and there has been no allegation to the contrary. Moreover, as shown by the Declaration of Selvaraj in Hensley, Ex. G, Petitioner's counsel have possessed and confidentially protected CentralSquare's data similar to that sought by the Subpoena (a subset of which is data sought in this case) since at least September 1, 2021, which is the date Selvaraj signed his Declaration in *Hensley*.

The risk of "reverse engineering" cited by CentralSquare in its objection will not be increased by further production of similar data in the same format that CentralSquare has already produced to Petitioner. Nor will blocking production of the requested information lessen the risk of disclosure. In light of the fact that Petitioner's counsel already possesses and safeguards some of the requested information, compliance with the Subpoena will not change the risk of reverse engineering. Further, that risk is already protected by two protective orders; one in *Hensley*, attached as Exhibit K and another in the Underlying Action, attached as Exhibit L.

The cases cited above show that where it is feasible to protect against a risk of disclosure by means of a protective order, the information should be produced. Petitioner's counsel have demonstrated that they will abide by the protective orders in place, so protection is feasible and the Court should compel compliance with the Subpoena.

## CONCLUSION

For the foregoing reasons, this Court should transfer Petitioner's

15

motion to compel to the Western District of North Carolina or, in the alternative, grant the motion to compel.

Respectfully submitted, this the 27th day of October 2023.

_____
Andrew H. Brown
N.C. Bar No. 28450
drew@greensborolawcenter.com
BROWN, FAUCHER, PERALDO & BENSON, PLLC
822 N. Elm Street, Suite 200
Greensboro, North Carolina 27401
Telephone: (336) 478-6000

/s/ J. David Stradley
_____
J. David Stradley
N.C. State Bar No. 22340
stradley@whiteandstradley.com
WHITE & STRADLEY, PLLC
3105 Charles B. Root Wynd
Raleigh, North Carolina 27612
Telephone: (919) 844-0400

/s/ John F. Bloss
_____
John F. Bloss
N.C. State Bar No. 23947
jbloss@greensborolaw.com
Frederick L. Berry
N.C. State Bar No. 9696
fberry@greensborolaw.com
HIGGINS BENJAMIN, PLLC
301 North Elm Street, Suite 800
Greensboro, North Carolina 27401
Telephone: (336) 273-1600

*Attorneys for Petitioner*

16

Case 1:23-mc-00042-UA-JEP   Document 2   Filed 10/27/23   Page 16 of 18

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing document complies with the word count limits contained in LR 7.3(d)(1).

_/s/ Andrew Brown_
_____
Andrew H. Brown
N.C. Bar No. 28450
drew@greensborolawcenter.com
BROWN, FAUCHER, PERALDO & BENSON, PLLC
822 N. Elm Street, Suite 200
Greensboro, North Carolina 27401
Telephone: (336) 478-6000

17

Case 1:23-mc-00042-UA-JEP   Document 2   Filed 10/27/23   Page 17 of 18

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was this day served upon all interested parties by depositing a copy of same in a prepaid, properly addressed envelope, in an official depository under the exclusive care and custody of the United States Post Office, addressed as follows:

> Patrick H. Flanagan
> Stephanie H. Webster
> **Cranfill Sumner LLP**
> PO Box 30787
> Charlotte, NC 28230
>
> Andrew S. Koelz
> **Hunton Andrews Kurth LLP**
> Suite 4100
> 600 Peachtree Street, N.E.
> Atlanta, GA. 30308

This the 27th day of October, 2023.

_____
Andrew H. Brown
N.C. Bar No. 28450
drew@greensborolawcenter.com
BROWN, FAUCHER, PERALDO & BENSON, LLC
822 N. Elm Street, Suite 200
Greensboro, North Carolina 27401
Telephone:(336) 478-6000